James **WENGERT**, Iris Ward, and Robert Cook, Appellants,

v.

Terry E. **BRANSTAD**, Governor of the State of Iowa; Paul Grossheim, Director of the Iowa Department of Corrections; and The Iowa Department of Corrections, Appellees.

No. 90–455.

Supreme Court of Iowa.

Sept. 18, 1991.

Philip T. Riley, Des Moines, for appellants.

Robert G. Allbee and Wade R. Hauser III of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellees.

HARRIS, Justice.

■ This action for declaratory and injunctive relief was brought to challenge item vetoes exercised by Iowa's governor. The question is whether the challenge was obviated when, at the governor's instance, an injunction was entered which barred him and state officials from treating the legislation in accordance with the challenged vetoes. On the basis of the injunction the trial court determined there was no justiciable controversy and accordingly declined to consider the merits of the challenge. We affirm.

The governor vetoed several items from a bill appropriating funds to Iowa's corrections system. The only vetoes controvert-ed were those striking the words "minimum security" two of the seven times they appeared in the Act. Section 7(6) of H.F. 772 appropriated funds for the

a. Construction of an additional 100 bed *minimum security* facility at Newton for parole and probation violators of which twenty-five beds are to be specifically used for substance abuse treatment programs for clients of the state adult corrections and twenty-five beds are to be specifically used for work-release inmates.

. . . .

f. For a total designed capacity of seventy-one *minimum security* beds at the Luster Heights facility by renovation of eighteen and the addition of seventeen minimum security beds.

The italicized portions indicate deletions which would be effected by the governor's vetoes.

Plaintiffs are taxpayers who brought this action seeking a declaration that the vetoes were illegal and void. The petition also sought an injunction restraining the governor from spending the appropriated funds for any purpose other than minimum security facilities.

The governor appeared, and, after admitting the foregoing factual details, denied any illegality in the exercise of the vetoes. After successfully resisting plaintiffs' application to adjudicate law points (to be discussed later), the governor applied for entry of a decree granting the injunctive relief sought by the plaintiffs: that is, that he and the other involved state officials be enjoined from spending the appropriated money for any purpose other than minimum security facilities.

The plaintiffs responded in some detail to the proposed decree. After stating they "welcomed the defendants' recognition of their obligations," plaintiffs resisted any adjudication that the case was resolved or to be considered moot. In granting the injunction the trial court nevertheless held that this resolved the dispute between the parties, making it inappropriate to reach the merits of plaintiffs' challenge. The court dismissed the challenge.

Plaintiffs had marshaled the challenge in their application to adjudicate law points, previously mentioned. In that application the plaintiffs recited the admitted adjudicative facts, those relating to the Act, its passage, and the purported veto. On the basis of our cases on the subject, most notably *Rush v. Ray*, 362 N.W.2d 479 (Iowa 1985), and *Welden v. Ray*, 229 N.W.2d 706 (Iowa 1975), the plaintiffs then felt entitled to an adjudication that the vetoes were illegal, void and of no effect. The governor had resisted the application, asserting the term "minimum security" has no statutory or other meaning.

In this appeal from the trial court's later refusal to address the merits of their challenge, the plaintiffs vigorously protest what they consider to be the inconsistency in the governor's position. Plaintiffs contend the governor's position in resisting the motion to adjudicate law points and his veto message[1] are to be contrasted with the position taken in presenting the order granting the injunction.

■ We think the trial court was correct in determining that the grant of injunctive relief was sufficient and all to which plaintiffs were entitled. Our lawgiving function is carefully designed to be an appendage to our task of resolving disputes. When a dispute ends, the lawgiving function ordinarily vanishes because it is axiomatic that we ordinarily do not answer academic or moot questions. *See, e.g., Iowa Bankers v. Iowa Credit Union Dep't*, 335 N.W.2d 439, 442 (Iowa 1983). We certainly should not go out of our way to answer a purely moot question because of its possible political significance. We regularly decline to address constitutional questions unless their answers are necessary to dispose of the case. *City of Des Moines v. Lohner*, 168

N.W.2d 779, 782 (Iowa 1969). A case is moot when it no longer presents a justiciable controversy; our test of mootness is whether an opinion would be of force or effect in the underlying controversy. *Iowa Bankers*, 335 N.W.2d at 442 (department rescission of challenged rules rendered challenge academic).

Under these authorities the trial court was correct in declining to reach plaintiffs' challenge unless the question falls within the public policy exception. *See Rush v. Ray*, 332 N.W.2d 325, 326 (Iowa 1983) (desirability of authoritative adjudication regarding item veto justified reaching moot question). Plaintiffs strongly contend their challenge qualifies.

We think not. Through a number of cases we have expounded on the metes and bounds of the governor's item veto authority. We most recently quoted the rule in *Welsh v. Branstad*, 470 N.W.2d 644, 648 (Iowa 1991), where we said the question is whether the vetoed portion of the legislation

> may be taken out of a bill without affecting its other purposes and provisions. It is something that can be lifted bodily from it rather than cut out. No damage can be done to the surrounding legislative tissue, nor should any scar tissue result therefrom.

(Quoting *Rush v. Ray*, 362 N.W.2d at 481.)

A pronouncement on the merits of plaintiffs' challenge in this case would cast no light, would in no way expand, develop, or refine the understanding of the governor's veto authority. It would serve only to state officially who was right and who was wrong. The governor's consent to expend the appropriated funds in accordance with the demands in plaintiffs' petition ended all

---

1. The governor's veto message stated in part:
   I am unable to approve the designated portion of section 7, subsection 6, lettered paragraph a, which defines the one hundred bed facility at Newton as "minimum security." The General Assembly separately provided an additional $2 million to upgrade the security in our prison system. The General Assembly included only 120 minimum security beds in this bill despite the fact that a need for over 300 more secure beds now exists. We would

   hope to use a portion of the $2 million appropriation to beef up the security of the Newton facility to better meet our current needs.
   I am unable to approve the designated portion of section 7, subsection 6, lettered paragraph f which refers to "minimum security" beds at the Luster Heights facility. The rationale for this item veto is the same as that used for the veto of the language relating to the Newton facility.

practical aspects of the dispute. This rendered plaintiffs' challenge academic. The trial court was correct in so holding.

AFFIRMED.