Sidney SIMPSON, Appellant,

v.

**UNITED STATES FIDELITY & GUARANTY CO., Appellee.**

No. 96–405.

Supreme Court of Iowa.

April 23, 1997.

Rehearing Denied May 16, 1997.

Christopher D. Spaulding and Phillip Vonderhaar of Hedberg, Ward, Owens & Vonderhaar, Des Moines, for appellant.

Barbara A. Hering and Karl T. Olson of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

An employee was seriously injured when he was struck by an uninsured motorist in the course of his employment. The injured employee brought a declaratory judgment action against his employer's insurer, claiming he was an insured legally entitled to recover under the uninsured motorist provisions. After the insurer had filed its answer and counterclaim, both parties filed a motion for summary judgment. The court concluded that the employee was not an insured, and that even if he was an insured, he violated the cooperation provision of the policy to the prejudice of the insurer. The court granted summary judgment for the insurer and against the employee. On appeal, we affirm.

I. *Background Facts and Proceedings.*

Sidney Simpson was severely injured at approximately 2:30 a.m. on April 5, 1991, when, after parking his employer's pickup truck, he was struck by a vehicle driven by Marsha Warren and owned by Lori Warren. Simpson was in the course of his employment for the Board of Waterworks Trustees of the City of Des Moines (Des Moines Waterworks) at the time and, as a result of the injuries, he received workers' compensation benefits in excess of $200,000. Des Moines Waterworks had acquired both workers' compensation and commercial automobile insurance, including uninsured and underinsured coverage up to $1 million, from United States Fidelity & Guaranty Company (USF & G). The employer's pickup truck was a covered "auto."

On March 25, 1993, Simpson filed a personal injury suit for damages against the Warrens. USF & G filed a notice of workers' compensation lien on February 4, 1994. Two months later, the Warrens filed a confession of judgment in the amount of $600,-000, which was accepted by Simpson. The confession of judgment and acceptance were made without notice to or consent of USF & G. The Warrens filed bankruptcy in January 1995.

On June 2, 1995, Simpson filed a petition for declaratory judgment. The petition alleged USF & G provided uninsured motorist coverage to him under the terms of the Des Moines Waterworks' policy and that judgment should be entered in the sum of $600,-000. After USF & G had filed its answer, both parties filed a motion for summary judgment. Simpson timely appealed from the court's denial of his motion and the court's grant of the motion for summary judgment filed by USF & G.

## II. *Scope of Review.*

■ Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Iowa R. Civ. P. 237(c). In determining if there is a genuine issue of fact, we consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. *Id.* The interpretation of an insurance policy is a question of law unless extrinsic evidence on the meaning of the policy language is offered. *Tropf v. American Family Mut. Ins. Co.,* 558 N.W.2d 158, 159 (Iowa 1997).

## III. *Uninsured Motorist Coverage.*

■ Simpson argues he (1) is an insured under the specific definition in the uninsured motorist endorsement and (2) is an insured under the liability coverage provisions and, therefore, must be afforded uninsured motorist coverage as required by Iowa Code section 516A.1 (1991).

■ A. The uninsured and underinsured motorist coverage endorsement issued by USF & G to Des Moines Waterworks provided:

## B. WHO IS AN INSURED

. . . .

>   3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto."

. . . .

## F. ADDITIONAL DEFINITIONS

The following are added to the DEFINITIONS Section:

. . . .

2. "Occupying" means in, upon, getting in, on, out or off.

This is a typical definition found in uninsured motorist coverage. As we recently stated:

> Historically, the term "occupying" has been defined as "in or upon or entering into or alighting from" the insured vehicle. The interpretation of this standard definition has given rise to repeated litigation concerning the scope of coverage. Courts have examined the relationship between the vehicle and the claimant, both as to geographical proximity and the orientation of the claimant's activities, to decide whether a particular claimant was "occupying" the insured vehicle at the time of his or her injury. Physical contact is usually not required for coverage under the traditional definition.

*Tropf,* 558 N.W.2d at 160 (citations omitted).

We employed the "physical contact" test in *Tropf* because the policy definition of "occupying" required the person seeking insured status to be "in physical contact with" the insured vehicle. When the policy definition does not impose this mandatory requirement of physical contact, most jurisdictions recognize there is a "zone" or "area" around the insured vehicle in which protection is afforded. 1 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 5.2, at 192 (2d ed. 1992) [hereinafter "Widiss"]. Coverage has been extended in many cases where the insured has been engaged in an activity associated with the vehicle's use or operation. *Id.* at 197. As suggested by Widiss:

> When persons are engaged in activities that relate to the "use" or the "mainte-

nance" of an insured vehicle, it seems reasonable that they should be accorded the same protection that is afforded for individuals who (a) have completed their "use" of an insured vehicle and are alighting or (b) are about to become occupants of an insured vehicle and are engaged in "entering." Certainly, extending protection to such individuals is fully consistent with the public policy underlying the statutory mandates for the uninsured motorist coverage.

*Id.* at 198.

B. USF & G liability coverage provided:

**A. COVERAGE**

. . . .

**1. Who Is An Insured**

The following are "insureds."

. . . .

**b.** Anyone else while using with your permission a covered "auto" you own, . . . .

Because he was using the truck with his employer's consent, Simpson argues he is an insured under the liability coverage portion of the policy. He insists Iowa Code section 516A.1 requires uninsured motorist coverage be provided to him as an employee using the Des Moines Waterworks' vehicle at the time of the accident. USF & G argues Simpson was not "using" the vehicle at the time he was injured.

We believe it is appropriate to consider the statutory provision relating to uninsured motorist coverage when construing the policy language. The terms of the policy are construed in light of the purposes and intent of the applicable statute. *Veach v. Farmers Ins. Co.*, 460 N.W.2d 845, 847 (Iowa 1990). It has been stated:

Therefore, if a coverage issue arises about the scope of protection when the insurance policy is subject to such a statutory mandate, there is an additional—and very compelling—justification for the view that coverage must be afforded for anyone who is engaged in the maintenance or use of an insured vehicle—that is, anyone who is engaged in the maintenance or use is an insured because such persons clearly are afforded liability coverage without regard to whether they are defined as "insureds"

in the coverage terms for the uninsured motorist insurance.

Widiss § 5.2, at 198.

C. Here, the district court concluded Simpson was not "upon" or "getting in or on" the vehicle at the time of the incident because he was, at best, walking back to the truck from the manhole where he was conducting a valve inspection, some twenty feet from the vehicle. The court also concluded the truck was not being used by Simpson at the time of the accident.

It is undisputed from the record that Simpson was inspecting a water main valve near the intersection of two streets. He had parked the truck on the curb lane of the street. To inspect the valve it was necessary to remove an eight-inch-diameter lid in the street pavement and clean out the box containing the valve. To accomplish this task, he used a variety of tools that were available in the truck. The truck was specially designed with directional arrow board lights, flashers, and strobe lights for safety. The truck was equipped with a hydraulic valve operator's machine that would extend three feet from the side of the truck to assist in opening the valve. The truck was the valve inspector's "toolbox on wheels." Although the trial court suggests Simpson was hit approximately twenty feet from the truck, other statements contained in Simpson's affidavit and the police report would locate the point of impact to be somewhere between five and ten feet from the truck. In his affidavit, Simpson stated:

I parked the Des Moines Waterworks' vehicle on the inside curb lane on N.E. 14th Street, south of Aurora Avenue, facing south. The lights of the company vehicle and directional arrow were activated and in use while I was working just outside of the vehicle. I was working on the valve that needed inspection when it was necessary for me to return to the Des Moines Waterworks' vehicle and get another tool. I was upon the Des Moines Waterworks' vehicle getting into the back of the vehicle to get the tool I needed when I was hit by a car operated by Marsha Lynn Warren.

We conclude as a matter of law that, whether Simpson was twenty feet or five feet from the truck, he was an insured of USF & G at the time he was struck by the uninsured motorist. It is clear he was in close proximity to the truck when he was injured. He had left the location of the valve and was returning to the vehicle to pick up another tool. He was clearly engaged in an activity relating to the use of the specialized truck. The vehicle was not merely a means of transporting persons, but was designed and equipped to aid with water valve inspection, cleanup, and repair.

Our decision is consistent with those in other states, in which uninsured motorist coverage has been extended to persons who are injured while "using" or "occupying" a vehicle. *See First Sec. Bank v. Doe,* 297 Ark. 254, 760 S.W.2d 863 (1988) (coverage extended to driver of tractor-trailer rig who was killed, when struck by hit-and-run driver, while standing on the street directing the backing of the truck, six to eight feet from the insured truck); *White v. Williams,* 563 So.2d 1316 (La.App.1990) (passenger was using or occupying vehicle when struck by uninsured motorist six or seven feet from his insured car after he had paid for gasoline and was returning to the car); *Great Am. Ins. Co. v. Cassell,* 239 Va. 421, 389 S.E.2d 476 (1990) (coverage provided when firefighter was killed, when struck by a hit-and-run driver twenty to twenty-five feet from the fire truck, while returning equipment to the truck); *Rau v. Liberty Mut. Ins. Co.,* 21 Wash.App. 326, 585 P.2d 157 (1978) (coverage upheld for a truck driver who was injured when struck by uninsured motorist, twenty feet from his truck, while returning to his truck after asking for directions about where to make the delivery).

IV. *Simpson's Compliance With Policy Conditions.*

■ Simpson also argues he is entitled to coverage and summary judgment because he substantially complied with all of USF & G's relevant policy conditions. In the alternative, he argues that any failure to comply was excused or waived by the insurer or was not prejudicial to the insurer. We disagree.

USF & G's policy stated the following business auto conditions:

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

. . . .

    a. In the event of "accident," "claim," "suit," or "loss," you must give us or our authorized representative prompt notice of the "accident" or "loss."

. . . .

    b. Additionally, you and any other involved "insured" must:

. . . .

      (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit."

. . . .

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

    a. There has been full compliance with all the terms of this Coverage Form. . . .

In its ruling, the district court stated that even if Simpson was an insured under the USF & G policy, he would be denied coverage for failing to comply with all the conditions precedent to bringing suit. The court concluded that Simpson's unilateral acts entitled USF & G to a summary judgment as a matter of law.

■ Whenever policy provisions are conditions precedent to coverage under an insurance contract, an insured must show substantial compliance with such conditions. *Fireman's Fund Ins. Co. v. ACC Chem. Co.,* 538 N.W.2d 259, 264 (Iowa 1995); *Met–Coil Sys. Corp. v. Columbia Cas. Co.,* 524 N.W.2d 650, 654 (Iowa 1994). If an insured cannot prove substantial compliance, he or she must show that (1) failure to comply was excused, (2) the requirements of the condition were waived, or (3) failure to comply was not prejudicial to the insurer. *Id.*

■ If an insured fails to prove substantial compliance, excuse, or waiver, prejudice to the insurer is presumed. *Met–Coil Sys. Corp.,* 524 N.W.2d at 654. Although this presumption is rebuttable, it will defeat an

insured's recovery unless it is overcome by a satisfactory showing of lack of prejudice. *Id.* The burden to show actual prejudice does not shift to the insurer until the insured has satisfactorily shown excuse or legal justification, such as reasonable mistake or trivial occurrence. *Id.*

A. We conclude as a matter of law that Simpson failed to meet his burden of showing substantial compliance with the "cooperation" provision. The purpose of a cooperation clause is to protect insurers and prevent collusion. *American Guarantee & Liab. Ins. Co. v. Chandler Mfg. Co.,* 467 N.W.2d 226, 229 (Iowa 1991). Clearly, Simpson did not cooperate with USF & G in the investigation, settlement or defense of the lawsuit.

USF & G was not a party in Simpson's lawsuit against the Warrens, and it did not appear or intervene in the litigation. Further, USF & G did not receive notice of the Warrens' offer to confess judgment or Simpson's acceptance of the Warrens' $600,-000 confession of judgment until after they were filed in district court. USF & G was never involved in any of the negotiations, and it never consented to any judgment or settlement. Simply stated, Simpson failed to cooperate with USF & G, in violation of the policy's explicit language.

■ B. Simpson argues that his failure to include USF & G in the settlement discussions should be excused because his attorney was unaware, at the time of the offer and acceptance of the confession of judgment, that USF & G had an uninsured motorist policy that would cover him.

■ An insured's mistaken belief or lack of knowledge regarding coverage may be a justifiable excuse for noncompliance with an insurance policy's provision. *Met–Coil Sys. Corp.,* 524 N.W.2d at 657. However, "mistaken belief or lack of knowledge regarding coverage does not rise to the level of a legal excuse for noncompliance with the ... conditions of an insurance policy unless the [insured] exercised due diligence." *Id.* To satisfy the due diligence requirement, the insured must not have been negligent and must have at least made a reasonable effort to discover the existence of coverage. *Id.*

We conclude Simpson did not show he made a reasonable effort to determine the existence of coverage. At the time of the negotiations with the Warrens, Simpson knew that they were uninsured and that he would have difficulty collecting on any judgment. Despite this, however, apparently no inquiry was made as to what coverage Simpson had through his employer, Des Moines Waterworks. In *Fireman's Fund,* we held "it is the responsibility of the insured, not the insurance company, to keep track of which carriers have provided him with liability insurance." *Fireman's Fund Ins. Co.,* 538 N.W.2d at 265 (quoting *Olin Corp. v. Insurance Co. of N. Am.,* 966 F.2d 718, 725 (2d Cir.1992)). As a matter of law, Simpson's noncompliance with the "cooperation" provision is not excused.

■ C. Simpson also argues that USF & G waived the "cooperation" provision by denying his claim. This argument has no merit as a matter of law. Even if USF & G improperly denied Simpson's claim based on his status as an "insured," there is no evidence in the record that USF & G waived the "cooperation" provision or any other policy provision.

■ D. Finally, Simpson claims that USF & G was not prejudiced by his actions. As noted earlier, in order to rebut the presumption of prejudice to the insurer, the insured must show lack of prejudice by satisfactory evidence. *Met–Coil Sys. Corp.,* 524 N.W.2d at 658. Even though the question of prejudice is usually for the jury, if the facts are undisputed and the only question concerns the breach of the policy, it may become a question of law for the court. *Fireman's Fund Ins. Co.,* 538 N.W.2d at 265.

It is not necessary that we conclude the insurer was prejudiced as a matter of law. *Met–Coil Sys. Corp.,* 524 N.W.2d at 659. We need only conclude that the insured failed to show lack of prejudice as a matter of law. *Id.* Simpson has not presented satisfactory evidence to rebut the evidence of substantial prejudice to USF & G in this case. Here, USF & G had no opportunity to participate in, control, or monitor the litigation between Simpson and the Warrens. USF & G also

had no opportunity to investigate the claim or assess its potential liability and damages. Without Simpson's cooperation, USF & G was not able to participate in the settlement discussions. Under these circumstances, we conclude the district court correctly granted USF & G's motion for summary judgment on this issue.

## V. *Conclusion.*

Because of this conclusion, we need not address the claim of issue preclusion. We affirm the summary judgment granted by the district court.

**AFFIRMED.**

All justices concur except SNELL, J. who dissents.

SNELL, Justice (concurring in part and dissenting in part).

I respectfully concur in part and dissent in part.

I agree with the result based on Simpson's failure to comply with the policy provisions.

I do not agree that Simpson is covered by the policy language contained in the uninsured motorist coverage policy purchased from USF & G by Simpson's employer, Board of Waterworks Trustees of the City of Des Moines. The case should be decided on the language of the policy that describes what coverage has been bought and sold, not on an expandable concept that uninsured motorist coverage should include, as a public policy canopy, anyone engaged in using the vehicle. The idea of "use" coverage in a "zone" around the insured vehicle, completely ignores, nay, eviscerates the contractual language that defines "occupying" a covered vehicle to mean "in, upon, getting in, on, out or off." An examination of dictionary definitions of these words shows that there is no ambiguity in them. Certainly, a person five or ten feet from the covered vehicle is not included in a dictionary description of the meaning of these words. The trial court indicates that Simpson was actually twenty feet from the truck when hit. We are not at liberty to find that Simpson was close enough to the vehicle, in "a zone of coverage," to squeeze into the policy language that defines "occupying." A beneficent intent to broadly sow uninsured motorist insurance is no substitute for the meaning of words.

The "occupying" word is included in section B(3) on "Who is an insured" and section F(2) on Definitions in the USF & G policy that states the terms for the "Iowa Uninsured and Underinsured Motorists Coverage" part of the policy. The idea that coverage is nevertheless provided because Simpson is "using" the vehicle is discovered by reaching outside the policy language that describes "occupying" in the policy that sets out the contract for "Iowa Uninsured and Underinsured Motorists Coverage." The "using" language is found by backtracking to section II, the "Liability Coverage" section that sets out the general liability obligations for coverage by the insurer and lists "Who is an insured." This section II is part of the Business Auto Coverage Form for liability coverage that is completely separate from the Uninsured Motorist Coverage part of the policy. There is no language in this insurance contract that fuses these sections together. Nor is there any support in logic or case law for the trumping of the "occupying" language in the Uninsured Motorist Coverage policy with the "using" language in the liability coverage section of the Business Auto Coverage Form, that is a completely separate policy coverage. This "using" language, vaulting into the Uninsured Motorist Coverage policy effectively negates the insurer's right to legally contract and define the nature and limits of its obligations under the law.