**IOWA MUTUAL INSURANCE CO., Appellee,**

v.

**Philip J. McCARTHY, Defendant,**

and

**Donna Rae Kelly, Individually and as the Administrator of the Estate of Leo J. Kelly, Deceased, and Amy Kelly, a Minor by Her Mother and Next Friend, Donna Rae Kelly, Appellant.**

No. 96-1371.

Supreme Court of Iowa.

Nov. 26, 1997.

Philip Willson of Willson & Pechacek, P.L.C., Council Bluffs, for appellant.

Roy M. Irish of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, L.L.P., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

This appeal involves a dispute concerning liability insurance coverage for a wrongful death claim made by the appellant, Donna Rae Kelly, as administrator of the Estate of Leo Kelly and as next friend of Amy Kelly, against Philip J. McCarthy, an insured of the appellee, Iowa Mutual Insurance Company. Coverage turns on whether Leo Kelly was an employee of McCarthy at the time of Kelly's death, thereby triggering the employee exclusion contained in Iowa Mutual's policy.

The question of Kelly's employment status was submitted to the jury, which determined Kelly was not McCarthy's employee. The trial court entered a judgment notwithstanding the verdict in favor of Iowa Mutual, ruling Kelly was McCarthy's employee as a matter of law. Based on this ruling, the court rendered a declaratory judgment that Iowa Mutual's policy provided no coverage for the claims made by Kelly's estate against McCarthy.

The estate appealed. We reverse and remand.

## I. Background Facts and Proceedings.

In 1993, Leo Kelly was fatally injured while making repairs to a harrow owned by Philip McCarthy. At the time of this accident, McCarthy was insured under a farm liability policy issued by Iowa Mutual. This policy excluded coverage for bodily injury sustained by "any employee . . . as a result of his or her employment by the 'Insured.'"

Iowa Mutual commenced this declaratory judgment action against McCarthy and Kelly's estate to obtain a ruling that the employee exclusion precluded coverage for any claims made by the estate against McCarthy. The estate filed a cross-claim against McCarthy, asserting McCarthy was liable for dam-

ages arising from Kelly's death. Iowa Mutual provided an attorney to defend McCarthy on the wrongful death claim. Upon Iowa Mutual's request, the court severed the cross-claim from the declaratory judgment action, with the coverage claim proceeding to trial first.

The parties agreed coverage was controlled by the employee exclusion. Accordingly, the sole issue submitted to the jury was whether Kelly was an employee of McCarthy at the time of the accident. The jury answered a special interrogatory finding Kelly was not McCarthy's employee when the accident occurred.

Iowa Mutual filed a motion for judgment notwithstanding the verdict, claiming the evidence established that Kelly was McCarthy's employee as a matter of law. The insurer also filed a motion for new trial, alleging error in the court's admission of evidence and instructions to the jury. The court set aside the jury's verdict and ruled as a matter of law that Kelly was an employee of McCarthy. Consistent with this ruling, the court held no coverage existed for the cross-claim asserted by the estate. The estate filed this appeal.

After the declaratory judgment had been entered, McCarthy settled the estate's wrongful death action over Iowa Mutual's objections. Pursuant to the settlement agreement, McCarthy confessed judgment for $507,500. This offer of judgment was accepted by the estate and the district court entered a judgment against McCarthy in the stipulated amount. McCarthy paid $7,500 to the estate and obtained a partial satisfaction of judgment. The estate agreed it would collect the balance of the judgment from Iowa Mutual, not McCarthy. In addition,

McCarthy assigned his rights against Iowa Mutual to the estate.

## II. *Issues on Appeal.*

This appeal presents several issues. Initially, Iowa Mutual claims the coverage issues raised in this appeal are now moot because McCarthy has forfeited any coverage by his unauthorized settlement with the estate. The insurer also contends that because McCarthy did not appeal, the trial court's declaration of no coverage is final and binding on the claimant, as well as the insured.

The estate disputes these contentions and asserts the trial court erred in granting Iowa Mutual a judgment notwithstanding the verdict. It argues there was sufficient evidence to generate a jury question on whether Kelly was McCarthy's employee. Iowa Mutual responds that the trial court correctly ruled as a matter of law that Kelly was an employee and not an independent contractor at the time of his death. The insurance company contends that, even if the trial court erroneously entered a judgment in its favor, it was entitled to a new trial for two reasons: (1) the trial court abused its discretion in admitting evidence of and instructing on an employer's filing requirements under federal tax laws and Iowa's workers' compensation law; and (2) the court erred by instructing the jury on the test for determining when a worker is an independent contractor.

## III. *Mootness of Appeal.*

■ Iowa Mutual claims the present appeal has been rendered moot by the insured's unauthorized settlement with the claimant.[1] The insurance carrier asserts McCarthy's actions breached two conditions in the policy:

---

1. Although an appellate court usually refuses to consider facts or evidence not before the trial court, it is appropriate to do so in considering an allegation of mootness. Consequently, "[m]atters that are technically outside the record may be submitted in order to establish or counter a claim of mootness." *In re L.H.*, 480 N.W.2d 43, 45 (Iowa 1992). As we noted in *In re L.H.*, we will "consider matters that have transpired during the appeal for this limited purpose." *Id.*; *see Buchhop v. General Growth Properties & Gen. Growth Management Corp.*, 235 N.W.2d 301, 302 (Iowa 1975) (considering set-

tlement occurring during appeal as it affected mootness of appeal); 5 Am.Jur.2d *Appellate Review* § 643, at 322–23 (1995) ("[A]n appellate court is bound to consider any change, either in fact or law, which occurred after the judgment was entered and, under the presently existing circumstances, determine if the case should be treated as moot."); *see also Grefe & Sidney v. Watters*, 525 N.W.2d 821, 826 (Iowa 1994) ("[W]hen we have notice of facts showing that only moot or abstract propositions are involved, we are not obligated to consider the appeal.").

(1) the clause requiring the insured to cooperate "in the investigation, settlement, or defense" of any claim or suit against the insured; and (2) the prohibition against the insured "voluntarily mak[ing] any payment, assum[ing] any obligation, or incur[ring] any expense" without Iowa Mutual's consent. Iowa Mutual argues these breaches void any coverage otherwise available to McCarthy, rendering any coverage determination moot. *See Grace v. Insurance Co. of N. Am.*, 944 P.2d 460 (Alaska 1997) (discussing effect of insured's settlement of underlying action on insurer's liability to pay under excess liability policy); *cf. Simpson v. United States Fidelity & Guar. Co.*, 562 N.W.2d 627 (Iowa 1997) (discussing effect of insured's settlement of underlying suit on liability of underinsured motorist carrier).

■■■ "In general, an action is moot if it no longer presents a justiciable controversy because the issues involved have become academic or nonexistent." *Buchhop v. General Growth Properties & Gen. Growth Management Corp.*, 235 N.W.2d 301, 302 (Iowa 1975). "[O]ur test of mootness is whether an opinion would be of force or effect in the underlying controversy." *Wengert v. Branstad*, 474 N.W.2d 576, 578 (Iowa 1991). In other words, will our decision in this case "have any practical legal effect upon an existing controversy"? 5 Am.Jur.2d *Appellate Review* § 642, at 321 (1995). We think it will and, therefore, hold that the present appeal is not moot.

■■ As we have noted, the insurer's claim of mootness rests on the insured's settlement of the underlying wrongful death claim. The settlement documents before us reveal that the estate intends to pursue collection of the balance of the stipulated judgment from Iowa Mutual. That controversy—the insurer's liability for the stipulated judgment—will clearly be affected by a ruling in the case before us. If we had decided to affirm the trial court's judgment that Iowa Mutual's policy provides no coverage for the claim made against its insured, it would follow that Iowa Mutual would not be liable for the insured's settlement of that claim. Consequently, a decision favorable to the insurer would have resolved the underlying controversy. Our

contrary decision reinstating the jury verdict and holding Iowa Mutual has coverage for the estate's wrongful death claim will not resolve the remaining controversy, but will preclude any defense by Iowa Mutual that coverage is excluded by the employee exclusion. Thus, an opinion in the present appeal will "be of force or effect in the underlying controversy." *Wengert*, 474 N.W.2d at 578. Consequently, this appeal is not moot.

We acknowledge, as argued by Iowa Mutual, that a declaratory judgment on the coverage issue is irrelevant if the insured has forfeited coverage by his settlement with the claimant. In that way, the events transpiring since the trial court's declaratory ruling have the *potential* of rendering the current appeal moot. But the effect of the insured's settlement on Iowa Mutual's obligation to pay the stipulated judgment has not yet been litigated, and we deem it ill advised to decide Iowa Mutual's liability in the context of a mootness claim. Therefore, we proceed to determine the issues presented in this appeal.

### IV. *Standing of Claimant to Pursue this Appeal.*

Iowa Mutual challenges the estate's ability to pursue this appeal. It points out the judgment of noncoverage is final as to McCarthy, who did not appeal from the trial court's ruling. *See Morris Plan Co. v. Bruner*, 458 N.W.2d 853, 855 (Iowa App.1990) (holding party's failure to appeal within time limit makes district court ruling final as to that party). Thus, argues Iowa Mutual, although the estate subsequently obtained, as part of the wrongful death settlement, an assignment of McCarthy's rights against Iowa Mutual, McCarthy had no rights to assign. Kelly's estate responds that a third-party claimant can litigate coverage in his or her own right and, therefore, the estate is not dependent on the assignment from McCarthy to establish standing to pursue this appeal.

We think this question was settled in *Farm & City Insurance Co. v. Coover*, 225 N.W.2d 335 (Iowa 1975). In that case, the insurance company had commenced a declaratory judgment action to determine coverage

for claims arising from an automobile collision. *Coover*, 225 N.W.2d at 336. The company named as defendants its insured and the third-party claimant injured in the accident. *Id.* The claimant's motion to dismiss the petition against him was granted by the district court. *Id.* In reversing this ruling, we adopted the general rule

> that the injured person's interest in the liability insurance policy of the insured arising at the time of the injury under [Iowa's] direct action statute is sufficient to make a coverage dispute between the insurer and insured a justiciable controversy between the insurer and the injured person.

*Id.* at 337. Based on this general rule, we held there was a substantial legal controversy between the insurance company and the third-party claimant, sufficient to support a claim for declaratory relief by the insurer against the claimant. *Id.* at 336–37.

■ The same rule applies here to support the estate's standing to litigate coverage on appeal. Iowa's direct action statute gives an injured party, such as the estate, a cause of action against the insurer if the injured party obtains a judgment that he cannot collect by execution against the insured. *See* Iowa Code § 516.1 (1993). Consequently, the estate has an interest in McCarthy's insurance coverage. Because this interest is "of sufficient immediacy and reality to warrant declaratory [relief,]" *Coover*, 225 N.W.2d at 336, the estate has standing to pursue this appeal.

Iowa Mutual's reliance on our decision in *Opheim v. American Interinsurance Exchange*, 430 N.W.2d 118 (Iowa 1988), is misplaced. In *Opheim*, the insurer had obtained a ruling of noncoverage in a declaratory judgment action it had filed against its insured. 430 N.W.2d at 119. The injured third-party claimant was *not* a party to the declaratory judgment action, yet this court held the claimant was bound by the judgment in that action. *Id.* at 121. We noted that although the claimant would have been a *proper* party to the declaratory judgment action, the claimant was not a *necessary* party to such an action. *Id.* (citing *Coover*, 225 N.W.2d at 336). In contrast to the situation in *Opheim*, the claimant here *is* a party to

the declaratory judgment action—a proper party with its own interest to protect. Therefore, the estate may proceed with this appeal.

## V. *Judgment Notwithstanding the Verdict.*

■ A. *Standard of review.* The trial court held as a matter of law that Kelly was an employee of McCarthy when the accident occurred and, accordingly, entered judgment notwithstanding the jury's verdict. We review this ruling for correction of errors at law. *See Magnusson Agency v. Public Entity Nat'l Co.—Midwest*, 560 N.W.2d 20, 25 (Iowa 1997). In reviewing the propriety of the court's ruling on a motion for judgment notwithstanding the verdict, we view the evidence in the light most favorable to the party against whom the motion is directed, here Leo Kelly's estate. *See Faught v. Budlong*, 540 N.W.2d 33, 35 (Iowa 1995). We consider every legitimate inference that may be fairly and reasonably deduced from the evidence. *See Federal Land Bank v. Woods*, 480 N.W.2d 61, 65 (Iowa 1992). The issue is whether there was "sufficient evidence to generate a jury question" on the issue of Kelly's employment status. *Id.* "[I]f reasonable minds might draw different inferences from [the facts,] a jury question is engendered." Iowa R.App.P. 14(f)(17).

Based on our review of the record before the trial court, we hold substantial evidence existed to support submission of the question of Kelly's employment status to the jury. Before we summarize this evidence, it is helpful to review the governing legal principles and the parties' contentions as to the applicable analysis.

B. *Applicable legal principles.* The estate criticizes the trial court's failure to consider the intention of the parties to create an employer/employee relationship in determining the sufficiency of the evidence on the employment issue. Iowa Mutual claims, on the other hand, that intent is irrelevant and only the five criteria listed by this court in *Caterpillar Tractor Co. v. Shook*, 313 N.W.2d 503, 505 (Iowa 1981), and *Henderson v. Jennie Edmundson Hospital*, 178 N.W.2d 429,

431 (Iowa 1970), should be considered on this question:

> (1) the right of selection, or to employ at will, (2) responsibility for payment of wages by the employer, (3) the right to discharge or terminate the relationship, (4) the right to control the work, and (5) the identity of the employer as the authority in charge of the work or for whose benefit it is performed.

*Shook,* 313 N.W.2d at 505.

This court observed long ago that the importance of various factors bearing on the existence of an employment relationship varies. *See Usgaard v. Silver Crest Golf Club,* 256 Iowa 453, 456, 127 N.W.2d 636, 638 (1964). Our cases since the *Usgaard* decision have borne out this observation. *See, e.g., Gaffney v. Department of Employment Servs.,* 540 N.W.2d 430, 435 (Iowa 1995) (holding agency erred in relying exclusively on parties' intent in determining employment status); *Parson v. Procter & Gamble Mfg. Co.,* 514 N.W.2d 891, 893–95 (Iowa 1994) (focusing on the existence of a contract of hire as shown by the parties' intent, stating it was unnecessary to consider five factors from *Henderson*); *LaFleur v. LaFleur,* 452 N.W.2d 406, 408 (Iowa 1990) (discussing several elements, but noting the " 'right to control the details of performance is the crucial factor' ") (quoting *Lewiston Daily Sun v. Hanover Ins. Co.,* 407 A.2d 288, 292 (Me. 1979)). We think these divergent holdings are reconcilable when considered in the context of the precise dispute giving rise to the employment-relationship issue.

In cases presenting a choice between categorizing a person as an employee or an independent contractor, the primary focus is on the extent of control by the employer over the details of the alleged employee's work. *See, e.g., LaFleur,* 452 N.W.2d at 408; *Nelson v. Cities Serv. Oil Co.,* 259 Iowa 1209, 1215–16, 146 N.W.2d 261, 265 (1966). In contrast, when the question concerning the nature of the employment relationship arises in the context of a borrowed servant situation, the primary focus is on the intent of the parties; if the five factors are considered at all, it is merely as an aid in determining whether there is a con-

tract of employment between the employee and the second employer. *See, e.g., Parson,* 514 N.W.2d at 895–97; *Rouse v. State,* 369 N.W.2d 811, 814 (Iowa 1985); *Shook,* 313 N.W.2d at 505. Finally, if the issue turns on whether the person is a "gratuitous employee," the most important element is the responsibility for payment of wages. *Usgaard,* 256 Iowa at 456–57, 127 N.W.2d at 638. It is important to note that even in those cases where the parties' intent is not the overriding or controlling consideration, it is still a factor to be considered. *See D & C Express, Inc. v. Sperry,* 450 N.W.2d 842, 844 (Iowa 1990) (stating that although the first inquiry is "who has the right to control the physical conduct of the service being performed," the intention of the parties is also a factor); *LaFleur,* 452 N.W.2d at 409 (considering the parties' intent, even though stating the right of control was the most crucial factor); *Peterson v. Pittman,* 391 N.W.2d 235, 237 (Iowa 1986) (noting intention of the parties was "relevant," although control is the "primary consideration").

The issue here, as framed by the parties and the evidence, is not whether there was an employment relationship between Kelly and McCarthy. The trial court, in its ruling on posttrial motions, correctly noted the evidence clearly established some type of mutual arrangement whereby Kelly would perform services for McCarthy. The issue here concerns the nature of that relationship: was it that of employer/employee or was Kelly an independent contractor? Thus, we focus on the factors most important to the distinction between an employee and an independent contractor.

When the issue is whether an individual is an employee or an independent contractor, many factors are relevant. *See Peterson,* 391 N.W.2d at 237; *Nelson,* 259 Iowa at 1215–16, 146 N.W.2d at 265. In *Peterson,* this court considered (1) who had the right to control the physical conduct of the work, (2) whether the purported employee was on the employer's payroll, and (3) who provided the equipment to accomplish the work. 391 N.W.2d at 238. In *Nelson,* we considered the five-factor test, quoted above, for determining the existence of an employer/employee relation-

ship, and eight additional factors bearing on the person's status as an independent contractor:

"(1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or of his distinct calling; (3) his employment of assistants, with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies, and materials; (5) his right to control the progress of the work, except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer."

259 Iowa at 1215, 146 N.W.2d at 264–65 (quoting *Mallinger v. Webster City Oil Co.*, 211 Iowa 847, 851, 234 N.W. 254, 256 (1931)). And, in every case where the issue was whether the person was an employee or an independent contractor, the court weighed the parties' intention as it reflected upon the employment relationship. *See, e.g., D & C Express*, 450 N.W.2d at 844 (stating intention of the parties is another factor in determining the nature of the parties' employment relationship); *LaFleur*, 452 N.W.2d at 409 (stating intent "is an important consideration in determining what sort of relationship the parties created"); *Nelson*, 259 Iowa at 1216, 146 N.W.2d at 265 (stating "the intention of the parties as to the relationship created or existing" is "another possible element").

The trial court here instructed the jury on each of the factors discussed in our cases. Our task now is to decide if there was substantial evidence of the factors showing Kelly was an independent contractor so as to support the jury's finding that Kelly was not McCarthy's employee.

C. *Sufficiency of the evidence.* The evidence, when viewed in the light most favorable to the jury's verdict, shows the following facts. Kelly and McCarthy were personal friends. Kelly had full-time employment with a trucking company, but also performed general farming services for McCarthy. Kelly had previously farmed and was very experienced in the tasks assigned to him by McCarthy. The services performed by Kelly for McCarthy included operating a combine, equipment maintenance, cleaning, running errands, and purchasing materials for McCarthy.

In 1992, the year before his death, Kelly kept track of his hours and out-of-pocket expenses. At the end of the year, McCarthy reimbursed Kelly for his expenses and paid him $6.00 an hour by transferring grain to him. Although McCarthy deducted amounts for federal taxes and social security from wages paid to his other employees, he did not withhold similar sums from Kelly's compensation. McCarthy testified he knew the penalties for not complying with the federal tax laws, but stated he did not consider Kelly to be an employee.

In 1993, Kelly had performed services for McCarthy on two occasions prior to the accident, but had not recorded any time or been paid for his services. As in 1992, McCarthy did not include Kelly as an employee in any of his tax filings for 1993. Additionally, McCarthy did not file a report of injury following Kelly's death, as employers are required to do under Iowa's workers' compensation law. *See* Iowa Code § 86.11.

 There was also testimony showing Kelly determined when and if he would work. As McCarthy testified, "I didn't know when he would be there and when he wouldn't." Although McCarthy directed what work was to be done, Kelly worked without supervision or further direction. If parts or supplies were needed for Kelly's work, Kelly would purchase what was needed. Kelly provided some of his own tools. From these facts, the jury could reasonably infer that Kelly had the right to control the manner and method of accomplishing the tasks assigned to him by McCarthy. This fact places Kelly's role within the definition of an independent contractor: " 'An independent contractor represents the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.' " *Meredith Publ'g Co. v. Iowa Employment Sec. Comm'n*, 232 Iowa 666, 672, 6 N.W.2d 6, 10 (1942) (quoting *Arne v. Western Silo Co.*, 214 Iowa 511, 516, 242 N.W. 539, 542 (1932)).

■ Kelly's right to control the physical details of his work for McCarthy, especially when combined with the evidence showing the parties did not intend to create an employer/employee relationship, constitutes substantial evidence supporting the jury's finding that Kelly was not McCarthy's employee. Although there was certainly sufficient evidence from which the jury could have made a contrary finding, it is not the court's role to reweigh the evidence. Because the jury's verdict was supported by substantial evidence, the trial court erred in entering a judgment notwithstanding the jury's verdict.

## VI. *New Trial.*

As an alternative to judgment notwithstanding the verdict, Iowa Mutual contends it was entitled to a new trial. A party is entitled to have an adverse decision vacated and a new trial granted if errors of law occurred in the proceeding. Iowa R.Civ.P. 244(h). Iowa Mutual claims error in the admission of evidence and the court's instructions.

A. *Evidence of an employer's filing requirements.* The estate introduced evidence that (1) an employer must file certain federal tax forms with respect to wage withholding for employees, and (2) an employer is required under Iowa's worker's compensation law to make a first report of injury when an employee is injured. In an attempt to establish that Kelly was not an employee, the estate showed McCarthy did not comply with the legal requirements imposed on an employer as to Kelly, even though McCarthy did meet these requirements with respect to other laborers whom McCarthy viewed as his employees. Iowa Mutual contends this evidence is not probative of any material fact because McCarthy's understanding as to whether or not Kelly was an employee is irrelevant. We review the court's determination of the relevancy of this evidence for an abuse of discretion. *See Sanford v. Meadow Gold Dairies,* 534 N.W.2d 410, 412 (Iowa 1995) ("As a general rule decisions concerning relevance and materiality of evidence are discretionary.").

Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R.Evid. 401. As we have already decided, the parties' intent is a proper consideration in determining whether there is an employment relationship. Consequently, the employer's intent is "of consequence to the determination of the action." Therefore, any evidence tending to show the employer's intent is relevant.

■ Our prior cases have implicitly considered the alleged employer's conduct in complying with federal tax laws as probative of the employer's intent to create an employer/employee relationship. *See, e.g., Parson,* 514 N.W.2d at 896 (considering filing of wage withholding forms); *D & C Express,* 450 N.W.2d at 844 (listing "withholding of federal income and social security taxes" as a factor in determining whether relationship is employer/employee or independent contractor); *LaFleur,* 452 N.W.2d at 408–09 (considering failure to withhold tax and social security); *Peterson,* 391 N.W.2d at 237 (listing several factors relevant to the inquiry, including whether the employer made the proper withholding for taxes and social security from the employee's compensation). We hold the same rule applies to the requirement under the workers' compensation law that an employer file a report of any injury to an employee.

Because the challenged evidence is probative of McCarthy's intent to create an employer/employee relationship, the trial court did not abuse its discretion in finding the evidence relevant. Iowa Mutual does not claim any exception to the general rule that relevant evidence is admissible. *See* Iowa R.Evid. 402 ("All relevant evidence is admissible, except as otherwise provided by [the Iowa or United States constitutions, any statute, or any Iowa Supreme Court rule]."). Therefore, the trial court's decision to admit the evidence and instruct the jury that compliance with federal withholding laws was a factor it could consider was not an abuse of discretion.

**B.** *Instruction on criteria for an independent contractor.* Iowa Mutual claims the trial court erred in submitting an instruction to the jury on the indicia of an independent contractor. We review a trial court's instructions for correction of legal error. *Grefe & Sidney v. Watters,* 525 N.W.2d 821, 824 (Iowa 1994).

 As noted earlier, there was no dispute in this case that Kelly had an agreement with McCarthy to perform services for McCarthy. Therefore, the contested issue was the nature of that relationship. This issue presented the jury with a classic choice between finding Kelly was an employee or finding he was an independent contractor. Given the issue in this case, it was appropriate for the court to instruct the jury on the test for determining whether Kelly was an independent contractor. The trial court did not err in doing so.

### VII. *Summary and Disposition.*

This appeal was not rendered moot by McCarthy's settlement of the wrongful death claim for which coverage is sought. Nor was the estate deprived of its ability to pursue this appeal by McCarthy's failure to appeal the trial court's adverse ruling. The estate, as a third-party claimant, had a sufficient interest of its own to support a request for declaratory relief on the availability of insurance coverage for its claim.

There was substantial evidence to support the jury's finding that Kelly was not McCarthy's employee at the time of Kelly's death. Therefore, the trial court erred in granting Iowa Mutual's motion for judgment notwithstanding the verdict.

The trial court did not abuse its discretion in admitting evidence of federal withholding laws or of an employer's obligation under the workers' compensation law to file a first report of injury, nor did the court err in instructing the jury on the criteria for an independent contractor. Consequently, Iowa Mutual is not entitled to a new trial.

We reverse the declaratory judgment entered by the trial court and remand this case for reinstatement of the jury's verdict and for the entry of a declaratory judgment that

Iowa Mutual's policy provides coverage for the estate's wrongful death claim. We express no opinion on the insurer's liability for the balance of the stipulated judgment entered on that claim.

**REVERSED AND REMANDED.**