**WEST BEND MUTUAL INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellee.**

No. 00–0618.

Court of Appeals of Iowa.

Jan. 10, 2001.

John F. Lorentzen and John T. Clendenin of Nyemaster, Goode, Voigts, West, Hansell, & O'Brien, P.C., Des Moines, for appellant.

Richard Trinrud of Brooks & Trinrud, P.C., Davenport, for appellee.

Heard by VOGEL, P.J., and MAHAN and MILLER, JJ.

MAHAN, Justice.

Plaintiff appeals from the district court's judgment in favor of defendant, concluding defendant did not breach its contract by refusing to defend or indemnify the insured. Plaintiff contends the trial court erred because the language of defendant's policy with the insured provided coverage for the loss at issue. Furthermore, plaintiff contends the district court's decision constituted an acceptance of the "closer to the risk" analysis previously rejected by the Iowa Supreme Court. If this court finds defendant's policy provided coverage, plaintiff requests we determine the settlement paid by it was fair and reasonable

and plaintiff be entitled to both pre-filing and prejudgment interest. We affirm.

**Background Facts and Proceedings.** West Bend and State Farm issued liability policies to a common insured, Steamatic of Iowa–Illinois, Inc. (Steamatic). This dispute concerns the respective liability of each insurer for the defense and settlement of a third-party claim against the insured.

Steamatic provides carpet, rug, furniture, and upholstery cleaning services on-site at its customers' premises. The cleaning unit used by Steamatic in this case was a Steamatic Model 8400–L Truck Mounted Unit (TMU). The TMU was installed into a 1988 Dodge Ram cargo van owned by Steamatic.

The TMU consists of a gasoline powered twenty-three horsepower two-cylinder engine that powers a high pressure water pump and a high suction vacuum pump. The TMU has a clean water tank capacity of fifty gallons and a vacuum tank capacity of sixty gallons. The TMU's self-contained water heater is powered from large liquid propane tanks installed in the cargo van by means of elastic cords that allow the tanks to be removed from the van for refilling or maintenance. The TMU is equipped with multiple hoses and cleaning devices, many of which extend from the cargo van into the building being cleaned. The TMU is securely bolted to the cargo van and cannot be removed without tools, specialized lifts, and other mechanical assistance.

West Bend issued a contractors business owner's insurance policy to Steamatic with a policy period from February 1, 1996 to February 1, 1997. The West Bend policy included commercial general liability coverage for property damage, subject to its terms and conditions. The West Bend

policy limited liability to $1,000,000 for each occurrence.

State Farm issued a policy to Steamatic on the 1988 Dodge Ram cargo van with a policy period from February 1, 1996 to February 1, 1997. The State Farm policy provided liability coverage for property damage "caused by an accident resulting from the ownership, maintenance or use of your car," subject to the policy's terms and conditions. The State Farm policy limited its liability coverage for property damage to $50,000 for each occurrence.

On July 2, 1996, a Steamatic employee was performing professional cleaning services at the home of Richard Bermel and Patricia Freiburger (customers) in Muscatine, Iowa, when a fire occurred causing property damage to their home. The fire originated in the cargo compartment of the van. The van's motor was not running at the time of the fire.[1] Investigators concluded the likely cause of the fire was a failure of the propane tank and propane delivery system that fueled the self-contained TMU. The van was parked directly under the porch of the house and a foot or two away from the garage door opening. The fire spread to the wooden porch and garage, and ultimately to the rest of the residence, resulting in a total loss.

Customers filed a petition against Steamatic seeking damages caused by the fire loss. State Farm refused to defend or indemnify Steamatic against the liability claim under its automobile policy. West Bend assumed the defense of Steamatic against the claim under its commercial general liability coverage. West Bend settled the customers' claim by a payment of $242,000. West Bend incurred $30,050.88 in legal, expert, and investigatory fees in defending against the customers' claim.

West Bend filed a petition in equity against State Farm, claiming State Farm

---

1. Due to problems with the ignition of the van, Steamatic had run a wire into the van to enable its engine to be started by touching the TMU's battery. On at least ten times prior to July 2, 1996, the Steamatic employee had to start the van by crossing a wire from the van's ignition to the TMU's battery. We note, however, the operation of the TMU did not rely in any way on the van for power.

breached its contract for refusing to defend or indemnify Steamatic and seeking a judgment against State Farm to compensate West Bend for its defense and indemnification of Steamatic against the customers. The parties submitted the matter to the district court for trial upon stipulated record. The parties submitted to the court a statement of undisputed facts, upon which the district court based its findings of fact. The district court concluded: (1) the TMU and the cargo van together are not a "vehicle" under Iowa insurance law; and (2) the operation of the TMU is not a "use" of the vehicle under Iowa insurance law. Plaintiffs appeal.

**Standard of Review.** Neither party offered extrinsic evidence to interpret the State Farm policy language at issue. Therefore, the interpretation of the policy is a matter to be resolved by the court as a matter of law. *Kalell v. Mutual Fire & Auto. Ins. Co.*, 471 N.W.2d 865, 866–67 (Iowa 1991). The district court's interpretation of the policy is not binding on appeal. *North Star Mut. Ins. Co. v. Holty*, 402 N.W.2d 452, 454 (Iowa 1987).

The insurance policy must be construed as a whole; the words used must be given their ordinary, not technical, meaning to achieve a practical and fair interpretation. *Holty*, 402 N.W.2d at 454 (quoting *Aetna Cas. & Sur. Co. v. Jewett Lumber Co.*, 209 N.W.2d 48, 49 (Iowa 1973)). Where the meaning of the terms in an insurance policy is susceptible to two interpretations, the one favoring the insured is adopted. *Id.*

**State Farm Policy.** We must first determine whether Steamatic's State Farm automobile insurance policy covered the July 2, 1996 fire loss. If it did not, we need not address the remaining issues raised by West Bend. To make this determination, we must address the following: (1) whether the TMU and the van together are a "car" ("vehicle") under Iowa insurance law and (2) whether the operation of

the TMU is a "use" of the vehicle under Iowa insurance law.

The State Farm policy provides State Farm will:

1. pay damages which an insured becomes legally liable to pay because of:

   (a) bodily injury to others; and

   (b) damage to or destruction of property including loss of its use,

   caused by accident *resulting from the ownership, maintenance or use of your car*; and

2. defend any suit against an insured for such damages with attorneys hired and paid by us. We will not defend any suit after we have paid the applicable limit of our liability for the accident which is the basis of the lawsuit.

(Emphasis added).

The policy defines "car" as "a land motor vehicle with four or more wheels, which is designed for use mainly on public roads."

**"Vehicle."** West Bend contends the TMU and cargo van together constitute a "vehicle" under Iowa insurance law because the TMU was permanently attached to the van, and thus became an integral part of it. We disagree.

In support of its contention, West Bend primarily relies upon *Holty*, and *Schlueter v. Grinnell Mut. Reins. Co.*, 553 N.W.2d 614 (Iowa App.1996). In *Holty*, an auger permanently attached to Holty's truck came loose and extended across the centerline of the road, injuring a motorcyclist forced off the road when the auger came loose. *Holty*, 402 N.W.2d at 453. Holty made a demand on North Star to defend him under his farm liability policy. *Id.* North Star filed a declaratory judgment action, requesting the court to construe the policy to exclude coverage and to find it had no duty to defend. *Id.* The supreme court concluded the auger was an apparatus attached to the truck, and therefore fit within the policy's definition of motor vehi-

cle.[2] *Id.* at 455. It determined the truck, box, and auger constituted one motorized vehicle, and the movement of the auger depended on the truck's movement and velocity to become a hazard. *Id.* Therefore, the accident was vehicle-related and arose out of Holty's use of the truck, thereby excluding the accident from coverage under the terms of Holty's farm liability policy with North Star. *Id.* at 455–56.

In *Schlueter*, a motorist hit a bale of hay that had fallen off a tractor atop a trailer hitched to a pickup truck driven by the insured. *Schlueter*, 553 N.W.2d at 615. The court concluded, "Although the accident here arose out of the use of a vehicle that is excluded under the policy, it also allegedly arose out of one or more concurrent non-vehicle-related acts." *Id.* at 617. The court distinguished the case from *Holty*, explaining the dangerous instrumentality in this case, a hay bale, was not a permanent fixture on the motor vehicle, was separable from the vehicle, and had not become an integral part of the vehicle. *Id.* at 616–17.

■ The case before us lies somewhere between *Holty* and *Schlueter*. The State Farm policy's definition of "car" is much more narrow than that in the policy at issue in *Holty*, and does not support the inclusion of the TMU within the definition. While the TMU was attached to the van, its power source—the propane system—was not. The TMU, unlike the auger in *Holty*, did not depend on the movement or velocity of the van to become a hazard. Rather, it was merely a piece of equipment located in the van with its own power source. The accident in this case, like in *Schlueter*, arose out of a non-vehicle-related act, a malfunction in the propane system that fueled the TMU. The fact the TMU was attached to the van does not in and of itself render the TMU an "integral part" of the vehicle such that the TMU and the van together constitute a "vehicle"

for the purposes of coverage under the State Farm policy. We conclude the van and the TMU together did not constitute a "vehicle" under Iowa insurance law. While we could end our analysis here, we find it useful and necessary to discuss whether the operation of the TMU is a "use" of the vehicle under Iowa insurance law.

**"Use."** West Bend contends the van insured by State Farm functioned as a "steam cleaner on wheels." Because Steamatic employees could not perform their duties without the van equipped with the TMU, West Bend argues, the Steamatic employee was engaged in activity related to the use of the van at the time of the fire. To support its argument, West Bend relies on *Simpson v. United States Fid. & Guar. Co.*, 562 N.W.2d 627 (Iowa 1997) (employee engaged in "use" of vehicle where truck was the employee's "toolbox on wheels").

■ We agree with the district court's assessment *Simpson* "was analyzed specifically in the context of uninsured motorist coverage," and therefore cannot be used in support of West Bend's argument here. The court in *Simpson* considered the statutory provision relating to uninsured motorist coverage when construing the policy language at issue. *Id.* at 630. The terms of the policy were construed "in light of the purposes and intent of the applicable statute." *Id.* Therefore, we find the *Simpson* court's analysis inapplicable to the case at bar. As the district court explained:

> The case at bar is not one where the plaintiff was injured walking to or from the vehicle; instead, the accident occurred because equipment necessary for Steamatic's business operation malfunctioned and caused damage. To use an analogy, this is not a case where an employee was injured while walking back to the vehicle ("toolbox") to re-

2. The policy defined motor vehicle as "a land motor vehicle, trailer, or semi-trailer designed for travel on public roads (including any ma-

chinery or apparatus attached thereto)...."
*Holty*, 402 N.W.2d at 453.

trieve a tool; instead, it is a case where a tool within the vehicle ("toolbox") malfunctioned and exploded. This Court does not believe the *Simpson* Court holding was intended to extend to cases where "tools" located within the vehicle caused damage.

We agree with the district court's application of *Keppler v. American Family Mut. Ins. Co.*, 588 N.W.2d 105 (Iowa 1999), to this case. In *Keppler*, a child entered the back of Keppler's van while it was parked at a flea market, and was bitten by Keppler's dog. At the time of the incident, the parked van was not moving, the engine was not running, and the keys were not in the ignition. *Id.* at 106. At issue was coverage under Keppler's American Family automobile insurance policy, which provided coverage for injury "due to the use of a car." The court concluded "due to" required a causal connection between the injury and the use of the vehicle. *Id.* Because Keppler's van "had nothing to do with the biting of the child, beyond providing the site where it happened," the court concluded no coverage was provided for Keppler's loss. *Id.* "[T]he words 'due to' cannot be stretched to situations where there is no connection between the injury and a vehicle being—at least remotely— used as such. Keppler's van was not in any manner functioning as a vehicle at the time. So there was no connection between the injury and the use of a vehicle." *Id.* at 107.

In the case before us, as in *Keppler,* the van was not running at the time of the incident. The fire damage occurred when the van was parked with its motor off. A malfunctioning propane system caused the fire. The propane system was not permanently attached to the van and did not rely on the van for its operation. The van had nothing to do with the fire, "beyond providing the site where it happened." *See id.* at 106. Without the requisite causal connection between the use of the van as such and the fire, the State Farm policy provides no coverage for the loss. We conclude the operation of the TMU is not a "use" of the vehicle under Iowa insurance law.

**Remaining Issues.** We need not address the remaining issues raised by West Bend, due to our conclusion the State Farm policy does not apply to cover the loss at issue in this case. To the extent issues raised by West Bend are not addressed, we find them without merit.

**AFFIRMED.**

HUITINK, J., takes no part.