# IN THE SUPREME COURT OF IOWA

No. 20–1510

Submitted January 20, 2022—Filed February 18, 2022

**RILEY DRIVE ENTERTAINMENT I, INC.** d/b/a **TONIC BAR; RILEY DRIVE ENTERTAINMENT XVI, INC.** d/b/a **SAINTS PUB + PATIO WAUKEE; CINDERELLA STORY, LLC** d/b/a **SHOTGUN BETTY'S; KISS MY GRITS, LLC** d/b/a **THE IRISH; AGB, L.L.C.** d/b/a **ANNIE'S IRISH PUB;** and **W. WEST INVESTMENTS, L.L.C.** d/b/a **WELLMAN'S PUB & ROOFTOP,**

Appellants,

vs.

**GOVERNOR KIMBERLY K. REYNOLDS,** in Her Official Capacity as Governor of the State of Iowa; and **IOWA DEPARTMENT OF PUBLIC HEALTH,**

Appellees.

Appeal from the Iowa District Court for Polk County, William P. Kelly, Judge.

Bars that were temporarily closed by a COVID-19 disaster proclamation appeal the district court's dismissal of their claims for injunctive and declaratory relief. **AFFIRMED.**

Mansfield, J., delivered the opinion of the court, in which all justices joined.

Billy J. Mallory (argued) and Daniel P. Kresowik of Brick Gentry, P.C., West Des Moines, for appellants.

Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Solicitor General, Tessa M. Register (argued), Heather L. Adams, and Samuel P. Langholz, Assistant Attorneys General, for appellees.

**MANSFIELD, Justice.**

### I. Introduction.

During the COVID-19 pandemic in late August 2020, the Governor issued a public health disaster proclamation that temporarily required bars and taverns in six counties to close their doors. Six of those establishments filed this lawsuit, seeking an injunction that would block the Governor's order on grounds it exceeded her statutory and constitutional authority. After the plaintiffs' request for a temporary injunction was denied, the Governor rescinded her order. At that point, the district court granted the Governor's request to dismiss the lawsuit as moot and, alternatively, for failure to state a claim. The plaintiffs appeal.

The plaintiffs acknowledge their case is moot but urge us to exercise our discretion to decide it anyway. The plaintiffs invoke the voluntary-cessation and the public-importance exceptions to mootness. We conclude that neither of these grounds is apt. We are not persuaded that the Governor rescinded her order in response to this lawsuit; the order was always going to be temporary. Nor do we think this is a case for the public-importance exception. The issues are important, but many of the conditions during late summer of 2020 are unlikely to be replicated. A decision here would not prevent future clashes over different pandemic-related orders made under changed conditions. Precedent and prudence together suggest we should not decide this case. Therefore, without reaching the merits of the plaintiffs' challenge, we affirm the district court's dismissal of this case as moot.

## II. Background Facts and Proceedings.

At the start of the COVID-19 pandemic, governors throughout the United States harnessed their emergency powers to issue orders aimed at slowing the spread of the virus. Iowa's Governor issued her initial public health disaster proclamation on March 9, 2020. State of Iowa Exec. Dep't, *Proclamation of Disaster Emergency* (Mar. 9, 2020). Then on March 17, she extended her proclamation and added numerous state-wide restrictions intended to decrease transmission of the virus. State of Iowa Exec. Dep't, *Proclamation of Disaster Emergency* (Mar. 17, 2020). These restrictions included the closing of fitness centers, theaters, casinos, adult daycare facilities, and senior citizen centers. *Id.* Restaurants and bars were closed except for carry-out business. *Id.* In addition, all gatherings of more than ten people were banned. *Id.*

The March 17 order listed reasons for the restrictions:

> WHEREAS, the World Health Organization has reported an outbreak of thousands of cases of Novel Coronavirus 2019 (COVID-19) in multiple countries, causing illness and deaths; and
>
> . . . .
>
> WHEREAS, multiple cases of COVID-19 have been confirmed in Iowa, and the Iowa Department of Public Health has determined that community spread of COVID-19 is occurring within our state; and
>
> . . . .
>
> WHEREAS, COVID-19 can spread person-to-person and poses a possibility of causing severe illness in certain populations and disability and/or death to certain Iowans. Likewise, reports forwarded by federal, state, and local officials indicate that state assistance is needed to manage and contain this outbreak; and

WHEREAS, the risk of transmission of COVID-19 may be substantially reduced by separating and restricting the movement of persons known or suspected to have the disease, or who have been exposed to those known or suspected to have the disease . . . .

*Id.* (Emphasis omitted.)

The Governor's COVID-19 public health disaster proclamation was subsequently extended and modified numerous times. *See COVID-19 Proclamations*, COVID-19 in Iowa, https://coronavirus.iowa.gov/pages/proclamations [https://perma.cc/5RER-35VF] (listing all COVID-19 disaster proclamations issued by the Governor). One such modification prompted this lawsuit: On August 27, during a rising tide of COVID-19 cases in Iowa, the Governor mandated a temporary closure of bars and taverns in six counties, including Polk and Dallas counties, through September 20. State of Iowa Exec. Dep't, *Proclamation of Disaster Emergency* (Aug. 27, 2020) ("All bars, taverns, wineries, breweries, distilleries, night clubs, and other establishments that sell alcoholic beverages for consumption on their premises shall be closed to the general public . . . ."). The order made certain exceptions for carry-out service, private gatherings, restaurants that derive most of their revenue from food, and the consumption of alcoholic beverages on casino floors, inside theaters, and within hotel rooms. *Id.*[1] The August 27 order explained the reasoning behind it, stating,

---

[1]The order listed the following four exceptions:

(1) Carry-out, drive-through, and delivery: . . . [F]ood or beverages may be sold if the food or beverages are promptly taken from the premises . . . .

(2) Private rental: An establishment that is closed to the general public may still serve food and beverages at a private gathering hosted at the establishment . . . .

"[T]he continued spread of COVID-19 in the state of Iowa, especially in Black Hawk, Dallas, Johnson, Linn, Polk, and Story counties warrants taking additional reasonable measures to reduce the transmission of COVID-19." *Id.* It also referenced the March 17 order. *Id.*

The six captioned plaintiffs in this case operate licensed bars in Polk County or Dallas County. All six businesses were required to close temporarily as a result of the Governor's August 27 order.

On August 28, two of these plaintiffs filed the initial petition in the Polk County District Court against the Governor and the Iowa Department of Public Health.[2] The following week, all six plaintiffs (the Bars) filed an amended petition, alleging that section 2(A) of the Governor's August 27 order that closed their doors was unlawful. The Bars' petition made several legal claims: (1) a public health disaster as defined in Iowa Code section 135.140(6) (2020) did not exist; (2) the order wrongfully restricted only a *portion* of an "area affected" by a public health disaster emergency instead of the *entire* area as required by section 29C.6(1); (3) the order also violated section 29C.6(1) because it did not state "in

---

(3) Restaurants: An establishment that prepares and serves food, the sale of which results in at least half of the establishment's monthly revenues may reopen or remain open to serve food and beverages . . . .

(4) Premises: Bars located in hotels, casinos, movie theaters, or sporting venues, or other establishments that are not required to be closed by this paragraph must still close to the public except as permitted in this paragraph. But this paragraph does not prohibit the consumption of alcohol on a casino floor, inside an individual theater, or in a person's hotel room . . . .

State of Iowa Exec. Dep't, *Proclamation of Disaster Emergency* (Aug. 27, 2020) (emphasis omitted).

[2]Hereafter, we will refer to the defendants collectively as "the Governor."

writing . . . the facts upon which it [was] based"; (4) the order was not a "reasonable measure[] . . . necessary to prevent the transmission of infectious disease and to ensure that all cases of communicable disease are properly identified, controlled, and treated" under section 135.144(3); (5) the order violated the Bars' right to equal protection under the Iowa Constitution; and (6) the order violated their due process rights under the Iowa Constitution. The Bars sought injunctive relief, declaratory relief, and damages.

The Bars' petition challenged certain facts recited in the Governor's August 27 order, while adding that it was unlawful to single out bars and taverns as opposed to other businesses. For example, portions of the petition alleged,

> 43. Defendants also cannot demonstrate that COVID-19 poses a "high probability" of a widespread exposure to an infectious or toxic agent that poses a "significant risk of substantial future harm" to a "large number" of the affected population.

> 44. Defendants cannot demonstrate that COVID-19 poses a "high probability" of short-term or long-term "physical or behavioral health consequences" to a "large number" of the affected population.

> . . . .

> 56. There is no evidence that the mere fact alcohol is being sold for consumption on premises increases an individual's risk of contracting or passing away from COVID-19, or somehow increases the severity of COVID-19 in an infected individual.

> 57. There is no evidence that consumption of alcohol at an establishment either increases an individual's risk of contracting or passing away from COVID-19, or somehow increases the severity of COVID-19 in an infected individual.

> 58. There is no evidence that COVID-19 is somehow more likely to be transferred on alcoholic beverage containers than on beverage containers containing non-alcoholic beverages.

The petition also attacked the disparate treatment of bars and taverns in the six designated counties as opposed to other counties.

The Bars moved for an immediate temporary injunction, supported by affidavits and other evidence. The Governor filed a resistance, backed by an affidavit of the State Epidemiologist and Public Health Medical Director. After an expedited hearing, the district court denied the request for a temporary injunction on September 4.

That same day, the Bars applied to our court for interlocutory review of the district court's denial of temporary injunctive relief. While that application was still pending, the Governor moved in the district court to dismiss the plaintiffs' petition for failure to state a claim.

On September 15, the Governor issued a new proclamation. *See* State of Iowa Exec. Dep't, *Proclamation of Disaster Emergency* (Sep. 15, 2020). Citing "changing public health conditions in the state of Iowa, especially in Black Hawk, Dallas, Linn, and Polk counties," the Governor lifted the temporary closure of bars and taverns in those counties, allowing them to reopen the next day. At the same time, the order continued the temporary bar closure in Johnson and Story counties for only another five days, though September 20.

On October 1, the Governor filed a reply brief in the district court in support of her motion to dismiss, making the further argument that the Bars' claim for injunctive relief was now moot. Meanwhile, on October 6, our court denied the Bars' application for interlocutory review.

Following another hearing, on November 16, the district court granted the Governor's motion to dismiss. First, the court determined that claims for injunctive relief were moot, stating, "There is nothing for the Court to enjoin now and the Court's ultimate decision would have no force or effect." The court reasoned that the public-interest exception to the mootness doctrine did not apply because the COVID-19 pandemic presents constantly evolving circumstances and "[e]ven if Governor Reynolds issues a future order forcing some establishments to close, the Court cannot say with any certainty that the legal issues will be framed the same way." The court also noted that "economic rights generally hold less public significance than other constitutional rights." Turning to the voluntary-cessation doctrine, the court stated that "Iowa law does not recognize [it] as an exception distinct from the public-interest exception."

Next, the district court rejected the Bars' damages claims for lack of subject matter jurisdiction because they had failed to exhaust their remedies under the Iowa Tort Claims Act. *See* Iowa Code §§ 669.5(1), .23(2).

Finally, the district court found in the alternative that the plaintiffs had failed to state a claim. The court explained at the outset, "Although the Plaintiff[s] state[] that they set forth specific facts to show that the Governor did not satisfy the statutory requirements of the proclamation and that she acted outside the scope of her authority, this Court finds these allegations really are legal questions." Thus, the court went on to consider whether the Governor had overstepped her statutory authority or violated the Iowa Constitution, and it found that she did not.

On the statutory claims, the court held that the pandemic was a "public health disaster" under Iowa Code section 135.140(6) because "COVID-19 was clearly a novel infectious agent creating substantial risk." Next, the Iowa Code section 29C.6(1) requirement that the proclamation include the "facts upon which it is based" was deemed satisfied because the March 17 order, which was incorporated by reference into the August 27 order, listed sufficient reasons for the declaration. Also, the court said it was acceptable under section 29C.6(1) to "take an incremental and tailored approach to impose restrictions on only part of an area affected." Additionally, the court concluded the Governor did not violate section 135.144(3) because, as the court explained,

> The requirements of section 135.144(3) that the Proclamation be "reasonable" and "necessary" do[] not mean that the Proclamation is the best policy, that it is logically conveyed with appropriate data or that it is necessary in the strictest sense. It simply means that there is some connection between the Proclamation's restrictions and the disaster it is trying to address. The elected official should be given the opportunity to balance risk and benefits across an entire community or state. The Proclamation satisfies this requirement . . . .

Regarding the plaintiffs' constitutional claims, the district court decided there had been no an equal protection violation because the Governor had given a rational basis for the disparate treatment of bars, and for the disparate treatment of the six selected counties:

> [S]ocial distancing is difficult in establishments where people go to socialize, the loud environment makes people huddle together closer and talk more loudly, and alcohol lowers inhibitions, which can make patrons less likely to follow social distancing and mask guidelines. Bars in the selected counties may be greater transmission risks, since each county has a university or a higher population, and each of them is within the top ten counties in the state for positive case counts.

(Citation omitted.) The plaintiffs' due process claim was also dismissed because they "were not entitled to pre-deprivation process based on the impracticality of the emergency situation."

The plaintiffs appealed this ruling, and we retained the appeal. On appeal, the Bars challenge only the dismissal of their claims for declaratory and injunctive relief. They are not pursuing their damages claims.

On February 3, 2022, while this appeal was pending, the Governor announced she would not renew her latest public health disaster proclamation and would let her previously assumed COVID-19 emergency powers expire on February 15. Press Release, Off. of the Governor of Iowa, *Gov. Reynolds Announces Expiration of Public Health Proclamation, Changes to COVID-19 Data Reporting* (Feb. 3, 2022), https://governor.iowa.gov/press-release/gov-reynolds-announces-expiration-of%C2%A0public-health%C2%A0proclamation%C2%A0changes-to-covid-19 [https://perma.cc/V52Q-HRU8] [hereinafter Feb. 3 Announcement].

### III. Standard of Review.

A motion to dismiss ruling is reviewed for correction of errors at law. *Benskin, Inc. v. W. Bank*, 952 N.W.2d 292, 298 (Iowa 2020). "For purposes of reviewing a ruling on a motion to dismiss, we accept as true the petition's well-pleaded factual allegations, but not its legal conclusions." *Id.* (quoting *Shumate v. Drake Univ.*, 846 N.W.2d 503, 507 (Iowa 2014)). A dismissal can only be affirmed when the petition, viewed in its most favorable light, fails to present a right of recovery. *Id.*

Mootness is, however, "a threshold question." *Homan v. Branstad*, 864 N.W.2d 321, 327 (Iowa 2015). An appellate court may consider matters technically outside the district court record in determining a question of mootness. *Iowa Mut. Ins. v. McCarthy*, 572 N.W.2d 537, 539 n.1 (Iowa 1997) (collecting cases).

**IV. Analysis.**

"Courts exist to decide cases, not academic questions of law. For this reason, a court will generally decline to hear a case when, because of changed circumstances, the court's decision will no longer matter. This is known as the doctrine of mootness." *Homan*, 864 N.W.2d at 328.

Bars in Polk and Dallas counties—including the plaintiffs' establishments—are open now. They have been open since September 2020. On November 16, 2020, following another spike in COVID-19 cases, the Governor issued a different type of order that allowed bars, taverns, and other drinking and dining establishments to remain open, but only until 10 p.m. State of Iowa Exec. Dep't, *Proclamation of Disaster Emergency* (Nov. 16, 2020). That restriction on hours was lifted a month later, on December 17. Since then, bars and taverns in the state have remained open. Accordingly, the parties agree that the Bars' claims for injunctive and declaratory relief are now moot. *See Baehne v. Indep. Sch. Dist. of Manly*, 207 N.W. 755, 756 (Iowa 1926) (holding that an appeal of a school board order that refused admission to a child who declined to be vaccinated for smallpox during an epidemic was moot because "more than one

year had elapsed since the entry of the order appealed from" and "the resolution
. . . has long since expired").

The issue is whether a mootness exception should prompt us, nevertheless, to hear the case. We have the ability to hear moot cases in appropriate circumstances. *See Clarke Cnty. Reservoir Comm'n v. Robins Revocable Tr.*, 862 N.W.2d 166, 173 (Iowa 2015) ("Mootness is not a question of power but rather one of restraint." (quoting *Rush v. Ray*, 332 N.W.2d 325, 326 (Iowa 1983))). Two exceptions have been asserted: voluntary cessation and public importance.

**A. Voluntary Cessation.** We have never recognized the voluntary-cessation doctrine by name in Iowa. But it is frequently applied in federal courts, and the plaintiffs ask us to apply it here. In the words of the United States Supreme Court:

> It is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." "[I]f it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.' "

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation omitted) (omission and alterations in original) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 & n.10 (1982)).[3]

---

[3]In a recent case granting preliminary injunctive relief to plaintiffs who sought to conduct at-home religious gatherings during the COVID-19 pandemic, the Supreme Court touched on the doctrine:

> [E]ven if the government withdraws or modifies a COVID restriction in the course of litigation, that does not necessarily moot the case. And so long as a case is not moot, litigants otherwise entitled to emergency injunctive relief remain entitled to

"Often described as a mootness exception, the voluntary-cessation doctrine exists to stop a scheming defendant from trying to 'immuniz[e] itself from suit indefinitely' by unilaterally changing 'its behavior long enough to secure a dismissal' and then backsliding when the judge is out of the picture . . . ." *Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 10 (1st Cir. 2021) (alteration in original) (quoting *Town of Portsmouth v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016)). "Pursuant to the 'voluntary cessation' exception, a civil action does not become moot when a defendant voluntarily ceases its allegedly improper behavior, if there is a reasonable chance that the behavior will resume." *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162 (4th Cir. 2021); *see also* 1A C.J.S. *Actions* § 83, at 350 (2016) ("The voluntary cessation exception to mootness exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct.").

Assuming, without deciding, that the voluntary-cessation doctrine exists in Iowa, we are not persuaded to apply it here. The August 27, 2020 order, when issued, was set to expire on September 20. The Governor ended the order as to bars in Polk, Dallas, Black Hawk, and Linn counties on September 15, five days earlier than originally planned. We have not been pointed to anything suggesting the Governor ended the order early or declined to renew it in order to avoid a litigation showdown. Notably, there had already been a showdown and the

such relief where the applicants "remain under a constant threat" that government officials will use their power to reinstate the challenged restrictions.

*Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (per curiam) (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) (per curiam)).

district court had taken a dim view of the Bars' prospects for eventual success. On September 4, the district court found the Bars were unlikely to prevail on the merits when it denied their request for a temporary injunction, stating, "This Court does not find a statutory violation in the Governor's Proclamations that allows the Plaintiffs a fair chance of prevailing . . . . Plaintiffs do not have a likelihood of success on the merits of their Constitutional claims."

Other appellate courts have declined to apply the voluntary-cessation doctrine to COVID-19 emergency orders for similar reasons. *See Parker v. Governor of Pa.*, No. 20–3518, 2021 WL 5492803, at *4 (3d Cir. Nov. 23, 2021) ("The voluntary cessation exception does not apply because the mandate expired by its own terms and not as a response to litigation."); *Bos. Bit Labs*, 11 F.4th at 10 ("That the Governor has the power to issue executive orders cannot itself be enough to skirt mootness, because then no suit against the government would ever be moot."); *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) ("Governor Edwards's stay-at-home orders expired by their own terms. The plaintiffs' request that we enjoin them is therefore moot."); *Aguila v. Ducey*, No. CV–20–0335–T/AP, 2021 WL 1380612, at *1 (Ariz. Mar. 24, 2021) ("Although the restrictions could return, the trend in Arizona has been to reopen, not close."); *Bayshore Enters., Inc. v. Murphy*, No. A–3616–19, A–3873–19, 2021 WL 3120868, at *10–11 (N.J. Super. Ct. App. Div. July 23, 2021) (per curiam) (finding that consolidated challenges to COVID-related restrictions were moot where the restrictions were no longer in effect and stating, "We are not persuaded otherwise by the . . . appellants' reliance on the so called 'voluntary cessation doctrine' ");

*Allen v. Lee,* No. M2020–00918–COA–R3–CV, 2021 WL 2948775, at *5 (Tenn. Ct. App. July 14, 2021) ("In the present case, there is no indication that the repeal of the closure requirements was animated in any way by a desire to thwart judicial review . . . ."). *But see Ector Cnty. All. of Bus. v. Abbott,* No. 11–20–00206–CV, 2021 WL 4097106, at *7 (Tex. App. Sept. 9, 2021) (applying the voluntary-cessation doctrine to deny a motion to dismiss when "the Governor and the State did not meet their heavy burden to make it absolutely clear that restrictions on people patronizing, and being served in, bars will not be reimposed through a future executive order").

**B. Public Importance.** The Bars also urge us to decide this case under the public-importance exception to the mootness rule. This exception, unlike voluntary cessation, is well-established in Iowa. Under this exception, we have the discretion to decide a moot case if "matters of public importance are presented and the problem is likely to recur." *Homan,* 864 N.W.2d at 330 (quoting *In re Guardianship of Kennedy,* 845 N.W.2d 707, 711 (Iowa 2014)). In determining whether to apply the public-importance exception, we consider four factors:

> (1) the private or public nature of the issue; (2) the desirability of an authoritative adjudication to guide public officials in their future conduct; (3) the likelihood of the recurrence of the issue; and (4) the likelihood the issue will recur yet evade appellate review.

*Id.* (quoting *Maghee v. State,* 773 N.W.2d 228, 234 (Iowa 2009)).

The issues presented here are of a public nature and important. But that doesn't mean they are likely to recur, at least in the same form they had in

August and September 2020. Consider the first five claims raised by the plaintiffs in their petition.

First, the Bars allege there is no public health disaster as defined in Iowa Code section 135.140(6). But the public health situation now is not what it was in August or September 2020. The COVID-19 pandemic has evolved. Whether the pandemic could fall under section 135.140(6) is a different question now than it was a year and a half ago. In any event, on February 15, 2022, the Governor's declaration of a COVID-19 public health disaster emergency lapsed. *See* Feb. 3 Announcement.

Second, the plaintiffs allege that it is illegal to target only bars and taverns in certain counties. But the subsequent November 16, 2020 order affecting bars didn't discriminate geographically. Who knows if a new order would do so, even if the Governor revived her public health disaster emergency declaration?

Third, the plaintiffs complain about the failure of the August 27, 2020 order to "indicate . . . the facts upon which it is based." Iowa Code § 29C.6(1). Yet a new closure order would presumably have its own, specific factual recitation.

Fourth, the plaintiffs assert that the August 27, 2020 order was not a "reasonable" response to the pandemic. But the pandemic has changed in nature, even as it has continued.

Fifth, the plaintiffs allege that the Governor violated equal protection principles in her order by singling out bars from other businesses and singling out six of Iowa's ninety-nine counties. However, there is no indication that a

subsequent order would single out bars or specific counties in this fashion. The November 16, 2020 order didn't.

Beyond that, much of the Bars' appeal as to the merits is centered on the procedural status of this case. The district court dismissed the Bars' case for failure to state a claim. The Bars complain that they did not have the opportunity to develop their case factually (although they had made an evidentiary submission in support of their unsuccessful motion for a temporary injunction). But the procedural status next time around may be entirely different.[4]

And we have no indication that there will be a next time around. In the last year, the Governor has not moved to close businesses in our state despite higher COVID-19 case numbers at times. *See* Iowa Dep't Pub. Health, *COVID-19 in Iowa: Summary Dashboard,* https://coronavirus.iowa.gov/ [https://perma.cc/QCL3-UX84]. And recently she terminated the public health emergency declaration altogether. *See* Feb. 3 Announcement.

The Bars downplay the relevance of COVID-19 closure cases from other jurisdictions finding that legal challenges were moot. They observe, "Cases from other jurisdictions were decided on different facts, on different statutes, and on different terms." But doesn't the same observation—i.e., that every COVID-19 case is different—counsel against our deciding the merits of this case now that

---

[4]The Bars ask us to make an "authoritative adjudication" on the substantive issues they have raised. Simultaneously, though, they challenge the district court's ruling on procedural grounds, namely, that the court improperly considered facts not alleged in their petition in deciding a motion to dismiss. If we agreed with the Bars' procedural challenge to the ruling, it is unlikely that we would reach many of the substantive issues to make an "authoritative adjudication."

the immediate dispute has ended? The next pandemic closure order in Iowa, if and when there is one, could well involve different facts, different statutes, and different terms. *See Martin-Trigona v. Baxter*, 435 N.W.2d 744, 745 (Iowa 1989) (declining to apply the public-importance exception to a challenge to certain procedures at the Democratic presidential caucus, noting that "[t]he Iowa Democratic Party might well decide to change its caucus procedures, as it is certainly free to do, before the next presidential election").

Our precedents make clear that we do not invoke the public-importance exception unless the dispute is likely to recur. For example, in *Homan v. Branstad*, Governor Branstad and the Iowa Department of Human Services had ordered the closing of a juvenile home a few months after the general assembly had appropriated funds for its operation. 864 N.W.2d at 322. The plaintiffs sued alleging that this action was unconstitutional under article IV, section 9 of the Iowa Constitution. *Id.* at 325. The district court temporarily enjoined the closing of the facility. *Id.* at 326. While our interlocutory review of the injunction was pending, the general assembly ceased funding the juvenile home's operations, making the case moot. *Id.* at 327. Even though our decision would no longer have any immediate effect, we considered whether the matter should be decided under the public-importance exception. *Id.* at 330–32. In the end, we declined to reach the merits. *Id.* at 332–33.

The issue in *Homan* was significant, but other factors weighed in favor of dismissal. *Id.* at 331–32. We first noted that the likelihood of seeing the issue emerge in future cases was very low. *See id.* at 332. Since the ratification of

Iowa's current constitution in 1857, we had never before been asked to interpret the provision at issue, and nothing indicated that the issue would recur in the near future. *Id.* Next, we recognized the limited utility our decision would have as a guide for future conduct. *See id.* Some of the plaintiffs' main arguments concentrated on specific language from the appropriation bill and other statutory requirements not likely to be relevant in other contexts. *Id.* Consequently, we hypothesized that it might be "difficult to draw lessons from a decision on the merits of this case, if we were to render such a decision." *Id.* We concluded with an acknowledgement that the legislative and executive branches could resolve the dispute and, in fact, had already done so. *See id.* Out of respect for the other two branches of government and for the other reasons previously mentioned, we dismissed the case as moot. *See id.*

Several similarities to *Homan* are present here: The executive action that is being challenged no longer has legal effect and there has been no threat to renew it; the statutes we are being asked to interpret do not come before the courts often; and the plaintiffs' legal challenge raised some specific circumstances that are not likely to be the same in the future.

The Bars rely on *Board of Directors of the Independent School District v. Green*, 147 N.W.2d 854 (Iowa 1967). In that case, a school district's policy did not allow married students to participate in extracurricular activities. *Id.* at 856. A recently married high school senior sued the district when he was not allowed to continue playing on the basketball team. *Id.* By the time the case reached our court, the plaintiff had already graduated. *Id.* Even so, we decided the merits of

the case. *Id.* at 857. We noted that it was "probable any similar case arising in the future will likewise become moot by ordinary standards before it can be resolved by this court." *Id.* Also, an authoritative adjudication in *Green* would provide school officials with a concrete determination of the rule's legality going forward. *See id.*

Likewise, in *In re Guardianship of Kennedy*, we applied the public-importance exception to the "important subject" of whether a guardian must obtain advance court approval before arranging for the sterilization of a male ward. 845 N.W.2d at 710–11. In that case, the sterilization had already occurred when the case reached us. *Id.* at 710.

*Green* and *Kennedy* are good examples of when the public-importance exception should be applied. Both cases presented individual, discrete points of law that had arisen and were going to arise again. Our resolution of those issues did not require us to examine a mosaic of outside factors that would probably never be duplicated. Also, deciding those cases did not put us in the position of rendering an abstract, advisory opinion on the legal authority of the head of a coequal branch of government. That is something we generally try to avoid. *See Wengert v. Branstad*, 474 N.W.2d 576, 578 (Iowa 1991) (en banc) ("We certainly should not go out of our way to answer a purely moot question because of its possible political significance.").

By contrast, a decision in this case would probably only provide a point of reference. For example, the Bars want us to decide whether the August 27, 2020 order was (or was not) "reasonable," and whether COVID-19 did (or did not)

constitute a public health disaster at that time. Those determinations would be tied to the political, social, and health environment of that moment. *See Beshear v. Goodwood Brewing Co.*, 635 S.W.3d 788, 801 (Ky. 2021) ("Although we acknowledge the COVID-19 pandemic is not yet over, the factual circumstances of the pandemic are much different now than they were in March 2020 or even just a few months ago."). It is unlikely that our decision would forestall future legal conflicts over emergency orders during this or a future pandemic.

With these considerations in mind, a number of other state appellate courts have declined to apply the public-importance exception to mootness during the COVID-19 pandemic. *See id.* at 798–800 (deciding not to remand for a new hearing on challenges to the Governor's order brought by bars because the pandemic evolved to change the "factual landscape" and the state legislature had curbed the Governor's emergency powers in a way that changed the "legal landscape"); *Beshear v. Acree*, 615 S.W.3d 780, 824 (Ky. 2020) (declining to review the Governor's rescinded COVID-19 restrictions on the plaintiff's racetrack business because pandemic responses constantly evolve as knowledge is gained and because of "ongoing attempts to balance that knowledge with keeping the economy open"); *N.C. Bowling Proprietors Ass'n v. Cooper*, 847 S.E.2d 745, 746 (N.C. 2020) (dismissing a lawsuit brought by bowling alleys as moot without considering possible exceptions after the Governor allowed the businesses to reopen); *C.R. Def. Firm, P.C. v. Wolf*, 226 A.3d 569, 569–70 (Pa. 2020) (per curiam) (dismissing a challenge to an emergency order that closed the plaintiff law firm's "physical operations" once that order was modified to exempt

legal services); *Allen*, 2021 WL 2948775, at *3 (declining to apply the public-importance exception where there was no reasonable expectation "that the Plaintiffs will be subjected to the complained-of requirements in the future"); *State v. City of Austin*, NO. 03–20–00619–CV, 2021 WL 1313349, at *7 (Tex. App. Apr. 8, 2021) ("[T]he State's claims for the particular injunctive relief at issue here are not capable of repetition and thus do not fall into the public-interest exception to mootness."); *see also Parker*, 2021 WL 5492803, at *4 ("The plaintiffs have not shown that there is a reasonable expectation that the statewide mask mandate will be reinstated . . . ."); *Hawse v. Page*, 7 F.4th 685, 692 (8th Cir. 2021) ("There is no reasonable expectation here that the County will reinstate the Public Health Order of April 20, 2020, limit religious gatherings to fewer than ten persons, and distinguish between attending religious services and shopping at big box stores. The disputed order was superseded in May 2020 in light of changing public health conditions, and circumstances have evolved substantially since then.").

When our fellow state appellate courts have reached the merits of a superseded COVID-19 order, typically the challenge has involved a single legal issue that is expected to resurface. *See, e.g., Green v. Alachua Cnty.*, 323 So. 3d 246, 249 n.2 (Fla. Dist. Ct. App. 2021) ("Because of the nature of the various emergency orders that we have seen and the county's continued commitment to public mask-wearing, we are not convinced that this is the last that we will see of this issue."); *Tavern League of Wis., Inc. v. Palm*, 957 N.W.2d 261, 266–67 (Wis. 2021) (reaching the merits of a lawsuit brought by bars claiming the department

of health's closure order had to be promulgated by rulemaking). Turning to a federal appellate example, in *Big Tyme Investments, L.L.C. v. Edwards*, the United States Court of Appeals for the Fifth Circuit declined to dismiss as moot an equal protection challenge to a state closure order that prohibited on-site consumption of alcohol and food at bars but permitted it at restaurants. 985 F.3d 456, 464–65 (5th Cir. 2021). The specific order had lapsed, but the specific legal issue raised by the bars remained—i.e., whether discrimination between bars and restaurants violated the equal protection clause. *Id.* As the court put it, "[T]he Governor's subsequent orders continue to differentiate between 'bars' and 'restaurants' in their respective operating capacities and reopening gating criteria. Consequently, even though the restrictions on 'bars' may have lessened, the crux of the bar owners' equal protection claim remains unchanged." *Id.* at 465.[5] By contrast, the present lawsuit involves multiple claims and issues; indeed, the Bars' own appellate brief identifies nine different questions they want us to address. Some of them are quite open-ended and context-dependent.[6]

---

[5]Another distinguishable situation is where the defendant announces an intent to impose the same executive order if conditions warrant. *See Cnty. of L.A. Dep't of Pub. Health v. Superior Ct.*, 275 Cal. Rptr. 3d 752, 759 (Cal. Ct. App. 2021) (declining to dismiss a lawsuit brought by restaurants challenging an expired closure order as moot where the county made it clear that it would reimpose the same order if there was another surge in COVID-19 cases); *see also Bayley's Campground, Inc. v. Mills*, 985 F.3d 153, 157 (1st Cir. 2021) (reaching the merits of a challenge to an expired self-quarantine order that presented a single claim implicating the constitutional right to travel where "the Governor has not denied that a spike in the spread of the virus in Maine could lead her to impose a self-quarantine requirement just as strict"). That is not the case here.

[6]For example, the identified questions include:

Does the pandemic constitute a "disaster" as defined under Iowa Code section 29C.2(4)?

. . . .

**V. Conclusion.**

For the reasons stated, we affirm the district court's dismissal of this action.

**AFFIRMED.**

---

. . . Under what circumstances does a "public health disaster" emergency cease under Iowa law?

. . . .

. . . Was the Order of Closure a "*reasonable* measure[] as *necessary* to *prevent* the transmission of infectious disease *and* to *ensure* that *all* cases of communicable disease are properly identified, controlled, and treated"?